UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN CURRIER,                                Case No. 06-12365

          Plaintiff,

v.                                                District Judge Paul V. Gadola
                                                   Magistrate Judge R. Steven Whalen

TRANSUNION CREDIT INFORMATION
COMPANY,

          Defendant.
_____/

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Trans Union, LLC's *Motion for Summary Judgment* [Docket #40], filed May 30, 2007, which has been referred for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED, dismissing the case.

     **I.    PROCEDURAL AND FACTUAL BACKGROUND**

On April 26, 2006, Kevin Currier filed suit in Wayne County Circuit Court, alleging that present Defendant Transunion Credit Information Company ("Trans Union") (a credit reporting agency) as well as now dismissed Defendants Experian Information Solutions, Inc., Equifax, Inc., Equifax Consumer Services, Inc., and Equifax Credit Information Services,

-1-

Inc., reported inaccurate and adverse information regarding his credit history. Plaintiff claims that Defendant "ha[s] intentionally violated the Fair Credit Reporting Act by refusing to delete inaccurate information" in his credit profile. *Complaint* at ¶20. He contends that Defendant has "conspired" with "creditors and/or merchants" by refusing to remove the derogatory information from Plaintiff's credit file, resulting in the denial of credit.[1] *Id.* at ¶¶11, 15-17. Plaintiff seeks an order requiring Defendant to remove the derogatory information, along with monetary damages. *Id.* at ¶¶12-18.

On May 25, 2006 the matter was removed to this Court. *Docket #1.* On September 19, 2006, Plaintiff stipulated to the dismissal of Equifax, Inc., Equifax Consumer Services, Inc., and Equifax Credit Information Services, Inc. *Docket #15-16.* On March 14, 2007, Plaintiff stipulated to the dismissal of Experian Information Solutions. *Docket #36-37.*

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact.

---

[1] On December 2, 2005, Plaintiff received a default judgment from the Wayne County Circuit Court against various creditors, ordering them to "remove any or all derogatory information as gathered and reported by and through the Defendant[s] to Transunion, Equifax, Experian, and any or all other credit or credit related agencies be removed from the Plaintiff, Kevin Currier's credit report." *Docket #40*, Exhibit B-1.

*Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

### III. ANALYSIS

Defendant contends that dismissal is appropriate for multiple reasons, first contending that Plaintiff admits that the information as reported was accurate. *Docket #40* at 6. Trans Union further argues that even assuming the credit report was inaccurate, it did not have notice that the information reported by creditors was incorrect before Plaintiff submitted a dispute letter, placing reasonable reliance on the certification of creditors. *Id.* at 8-14. Defendant also submits that Plaintiff cannot show that it furnished an inaccurate credit report to any third party, pointing out that even assuming that it provided such information, liability is precluded under the Fair Credit Reporting Act ("FCRA"). *Id.* at 14-17. Defendant argues

further that Plaintiff cannot show that the reports at issue were a "'substantial'" factor'" in the denial of credit, pointing out that the FCRA precludes Plaintiff's claims for recovery of business or equitable damages. *Id*. at 17-21; *Enwonwu v. Trans Union*, LLC, 364 F.Supp. 2d 1361, 1366(N.D. Ga. 2005). Finally, Trans Union argues that because Plaintiff has failed to provide support for his slander of credit or conspiracy allegations, these claims should also be dismissed. *Docket #40* at 22-24.

### A. Accuracy of Information

Defendant reports that it received dispute letters from Plaintiff on February 1 and March 20, 2006, demanding the deletion of a total of 17 accounts. *Docket #40,* Exhibit B at ¶¶22-30. Defendant contends that because Plaintiff has failed to show that the credit history information was incorrect, it is entitled to summary judgment. *Docket #40* at 7. A May 2007 affidavit of Eileen Little, a Group Manager at Trans Union, states that Plaintiff was informed that "the sources of the disputed information" would be contacted to verify the reports. *Id*. at ¶¶ 22, 31. Little states that as a result of the investigation, "four accounts were deleted from [Plaintiff's] consumer report," with the remainder of the accounts verified. *Id*. at ¶33. Little states further that on April 20, 2006, Trans Union "sent Plaintiff a current copy of his Trans Union credit file." *Id*. at ¶38.

Although Defendant argues that it reported accurate information, Trans Union issued a document on April 18, 2006, showing that as a result of the investigation requested by Plaintiff, a total of four credit reports had been deleted. *Docket #40*, Exhibit B-25.

Therefore, Defendant apparently concedes that at some point, Plaintiff's credit report contained incorrect entries.

### B. Plaintiff Has Failed to Show Liability under 15 U.S.C. § 1681e(b) or §1681i

#### 1. § 1681e(b)

While apparently, Defendant's credit report of Plaintiff contained erroneous entries, this alone does not create liability. Under 15 U.S.C. § 1681e(b)

> "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

In order to establish a §1681e(b) claim, a plaintiff must establish the following:

> "(1) the defendant reported inaccurate information about the plaintiff; (2) the defendant either negligently or willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about the plaintiff; (3) the plaintiff was injured; and (4) the defendant's conduct was the proximate cause of the plaintiff's injury."

*Nelski v. Trans Union, LLC,* 2004 WL 78052, *3 (6th Cir. 2004); *Morris v. Credit Bureau of Cincinnati, Inc.,* 563 F.Supp. 962, 967 (S.D.Ohio 1983). While the record shows the presence of inaccurate information, satisfying the first prong of the *Nelski* test, Plaintiff has failed to make any showing that after receiving notice of the incorrect entries, Defendant either negligently or willfully failed to follow reasonable procedures. *Spence v. TRW, Inc*. 92 F.3d 380, 383 (6th Cir. 1996) holds that §1681(b) "does not impose strict liability for inaccurate entries in consumer reports; the preparer is held only to a duty of reasonable care,"

adding that "[t]he exercise of reasonable care is determined by reference to what a reasonably prudent person would do under the circumstances." *Id.*; *Bryant v. TRW, Inc.,* 689 F.2d 72, 78 (6th Cir.1982).

Despite the apparent fact that at one point, the credit reports included erroneous information, Defendant has shown the absence of a genuine issue of fact as to whether its actions were reasonable. Eileen Little's affidavit states that among Defendant's procedures to insure the accuracy of furnishers' information, Trans Union conducts "monthly and yearly audits, monitoring and accuracy checks of the information [f]urnishers provide to make sure that the data provided is accurate," stating further that when such procedures "indicate a [f]urnisher is unreliable, the . . . information is suppressed and removed from credit reports until the information is corrected." *Docket #40*, Exhibit B at ¶¶10-11. Little's affidavit indicates further that the furnishers of the disputed charges in the present case "have never failed audits or reported inaccurate information that exceeded Trans Union's thresholds;" therefore, Trans Union "has never deemed the subject Furnishers unreliable sources of information." *Id.* at ¶¶11-21.

### 2. § 1681i

Moreover, Defendant's actions in investigating the disputed entries conform to the requirements of 15 U.S.C. § 1681i, which requires a credit reporting agency to promptly

conduct a reinvestigation of the disputed entries.² Eileen Little's affidavit indicates that upon receiving Plaintiff's February 1, 2006 dispute letter, Defendant initiated an investigation into the account at issue, including a verification from the furnisher, and informed Plaintiff of its results on February 15, 2006. *Docket #40*, Exhibit B at ¶¶24-26; I*d*. at B-2-4. Defendant also conducted prompt investigations of Plaintiff's dispute letters consisting of two complaints dated March 9, 2006 (received March 20, 2006) and an April 12, 2006 complaint (received April 18, 2006). *Id*. Exhibit B at ¶¶31-35, 38; *Id*. at B-6-26.

Likewise, Plaintiff's implied argument that Trans Union was required to immediately delete the disputed entries without verifying the information with its furnishers stands at odds with Defendant's duty under §1681i(a)(2) to notify furnishers in the event of a dispute. Defendant's duty to report disputes to furnishers promptly is rooted in the common sense observation that credit reporting agencies "have no mechanisms for auditing the reliability and truthfulness of consumers." *Anderson v. Trans Union LLC*, 367 F.Supp.2d 1225, 1234

---

²"If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file ... before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer." *Nelski*, 2004 WL 78052, * 7; 15 U.S.C. § 1681i(a)(1)(A).

.

-1235 (W.D.Wis.2005). "Requiring them to accept and rely upon information in letters from consumers would be an invitation to fraud." More fundamentally, as discussed above, Defendant has demonstrated that it complied with its reinvestigation duties. Further, although Plaintiff contends that Defendant was errant in failing to add a note to the accounts indicating that they were in dispute during the course of its investigation, Defendant notes that Plaintiff's dispute letter did not request "that Trans Union add a consumer statement to his file with regard to any disputed account."

### C. For Similar Reasons, Slander of Credit and Conspiracy Claims are Dismissible

Plaintiff state law claims are also subject to dismissal. In regard to the liability of credit reporting agencies, the FCRA provides that "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . except as to false information *furnished with malice or willful intent to injure such consumer*." 15 U.S.C. § 1681h(e). "[P]ursuant to the Fair Credit Reporting Act, the company furnishing the information is protected from state law defamation and invasion of privacy claims unless the information it provided was both false *and* also given with the malicious or willful intent to damage the consumer." *Lofton-Taylor v. Verizon Wireless,* 2008 WL 189853, *2 (11th Cir. 2008). Because as discussed above, Plaintiff has failed to provide any indication that Defendant was negligent, much less acting "with malice or willful intent to injure" (either alone or in concert with various furnishers), his slander and conspiracy claims are precluded

by the FCRA.

**D. Damages**

In the absence of any showing by Plaintiff that Defendant breached its statutory duty by "negligently or willfully failed to follow reasonable procedures" necessary to sustain a § 1681e(b) claim, failed to conduct a reasonable reinvestigation under as required by § 1681i, or acted willfully or maliciously as required to avoid preemption of the state law claims, the Court is not required to determine the presence or extent of Plaintiff's damages.[3] *Johnson v. Equifax, Inc.*, 510 F.Supp.2d 638, 648 (S.D. Ala. 2007).

In the same vein, even assuming that Defendant supplied inaccurate information to an outside party, Plaintiff cannot establish a causal connection between Trans Union's credit report and the alleged denial of a $500,000 loan and two $425,000 loans. Defendant notes that the alleged loan applications were made in the year following Plaintiff's Bankruptcy filing and further, that Plaintiff has admitted "numerous other undisputed adverse accounts," arguing persuasively that the Trans Union accounts "were not a substantial factor" in the credit denials. *Docket #40* at 2, 17; *Enwonwu*, *supra*, 364 F. Supp. 2d at 1366. More

---

[3] Pursuant to 15 U.S.C. § 1681o(a), "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of 1) any actual damages sustained by the consumer as a result of the failure" as well as attorneys' fees. Under §1681n(a)(2), a *willful* failure to comply with the FCRA is subject to punitive as well as compensatory damages. Although I recognize that "it is generally a question of fact for the jury as to whether a reasonable investigation was conducted," *Schade v. MBNA America Bank, N.A.,* 2006 WL 212147, *5 (W.D.N.C.2006), I find a dearth of evidence supporting Plaintiff's claims that Trans Union was negligent.

obviously, because Plaintiff cannot show that Defendant was negligent, willful, or unreasonable, thus failing to establish the elements of § 1681e(b), §1681i, or state law claims, Plaintiff cannot recover damages for the alleged supplying of inaccurate credit reports to third parties. Plaintiff's claim for damages under the theory that the alleged loan denials were injurious to his business interests are non-recoverable based on the FCRA's preclusion of the recovery of business damages as well as the absence of provisions concerning equitable damages. *Id.* At 17-21; *Boothe v TRW Credit Data*, 523 F. Supp 631, 633 (D.C.N.Y. 1981) (The FCRA "was intended to apply only to reports which relate to the consumer's eligibility for personal credit or other commercial benefits as a consumer, and not to the consumer's business transactions.").

To the extent that Plaintiff faults Trans Union for failing to follow the December 2, 2005 Wayne County Circuit Court's order, directed at that action's defendants, to "remove any or all derogatory information as gathered and reported by and through the Defendant(s) to Transunion," this Court notes that Trans Union was not a party to that action and further, that the order in question was directed to creditors rather than the credit reporting agencies *Docket #40* at B-1. Plaintiff's prior credit report problems precipitating the December 2, 2005 state court order appear to be attributable to those defendants' failure to request deletions of unfavorable information; accordingly, the failure to remove incorrect information, if present, was the responsibility of those defendants rather than Trans Union.[4]

---

[4]In regard to the furnishers duties, § 1681s-2(a)(B) states that "[a] person shall not furnish information relating to a consumer to any consumer reporting agency if (i) the person

This court notes in closing that although the present motion was filed over eight months ago, Plaintiff's response has been limited to a one-page statement, unsupported by accompanying documentation, that Trans Union has "ignored the writings and spirit of the [FCRA]." Overwhelming evidence that Defendant complied with its duties under the FCRA indicates that summary judgment is appropriate.

## IV. CONCLUSION

For these reasons, I recommend that Defendant's motion for summary judgment [Docket #40] be GRANTED, and that the case be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.CT. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate

---

has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate. 15 U.S.C.

Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 28, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 28, 2008.

S/G. Wilson
Judicial Assistant